Filed 10/23/15  P. v. Sanchez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>JAIME SANCHEZ,<br><br>  Defendant and Respondent. | B262456<br><br>(Los Angeles County<br>Super. Ct. No. BA428620) |

APPEAL from an order of the Superior Court of Los Angeles County.  Dorothy B. Reyes, Judge.  Reversed and remanded.

Jackie Lacey, Los Angeles County District Attorney, Steven Katz, Head Deputy District Attorney, and Matthew Brown, Deputy District Attorney, for Appellant.

Ronald L. Brown, Los Angeles County Public Defender, Albert J. Menaster and Mark Harvis, Deputy Public Defenders, for Respondent.

_____

After being charged with first degree burglary, Jaime Sanchez entered into a plea agreement pursuant to which he pled no contest to one count of second degree burglary and admitted a prior serious felony for strike and prior prison term enhancement purposes. In exchange, he was sentenced to a negotiated 44-month prison term.

Two months later, voters passed Proposition 47 (Prop. 47 or the Act), which reduced certain theft and drug possession offenses from felonies to misdemeanors. Among other things, Prop. 47 added section 459.5 to the Penal Code.[1] Under this section, certain offenses previously punishable as felony burglaries are now punishable as misdemeanor "shoplifting." The new statute defines "shoplifting" as "entering *a commercial establishment* with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." (§ 459.5, subd. (a), italics added.)

Pursuant to section 1170.18—another statute added to the Penal Code by Prop. 47—Sanchez petitioned the trial court to have his sentence recalled and to be resentenced as a misdemeanor offender. Over the People's objection, the trial court granted the petition and sentenced Sanchez to two years' summary probation.

The People have appealed, claiming (1) Sanchez did not qualify for Prop. 47 resentencing because he broke into the laundry room of an apartment complex, which is not a "commercial establishment," and (2) even assuming that the new shoplifting statute could apply to the facts of this case, the proper remedy would be to vacate the plea and reinstate the original charges.

We agree with the People's first contention and reverse the trial court's order with directions. In light of this holding, we do not consider the People's second contention.

---

[1] Undesignated statutory references are to the Penal Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.    *The Felony Complaint and Plea*

The relevant facts are undisputed.  In August 2014, the People filed a felony complaint, charging Jaime Sanchez with one count of first-degree residential burglary (§ 459).  The complaint did not allege any specific facts regarding the nature of the offense, except to state that Sanchez "did enter an inhabited dwelling house and trailer coach and inhabited portion of a building . . . ."  The complaint also alleged—for strike and prior prison term enhancement purposes—that Sanchez had suffered a first degree burglary conviction in 2012.

In September 2014, Sanchez entered into a plea agreement pursuant to which (1) the People amended the complaint to add one count of second degree burglary (§ 459), (2) Sanchez pled no contest to the newly-added second degree burglary count and admitted the prior first degree burglary conviction for various enhancement purposes, (3) the court dismissed the first degree burglary count, and (4) the court sentenced Sanchez to a negotiated 44-month prison term, comprised of the low term of 16 months, doubled because of the prior serious felony conviction (§ 667, subd. (e)(1)), plus an additional one year because of the prior prison term (§ 667.5, subd. (b)).  The parties stipulated to a factual basis for the plea and admission "based on the arrest reports and complaint."

2.    *The Passage of Proposition 47*

In November 2014, voters enacted Prop. 47, the Safe Neighborhoods and Schools Act, which reduced certain theft and drug possession offenses from felonies to misdemeanors.  Among other things, Prop. 47 added section 459.5 to the Penal Code.  That section provides that certain burglary offenses are "shoplifting" and that shoplifting is to be punished as a misdemeanor.  The new statute defines "shoplifting" as "entering a commercial establishment with intent to commit larceny while that establishment is open

3

during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)."  (§ 459.5, subd. (a).)

Under Prop. 47, a person serving a felony sentence for an offense that was reduced to a misdemeanor under the Act may petition the sentencing court to have the sentence recalled and to be resentenced under the new misdemeanor provisions of the Act.[2] (§ 1170.18, subd. (a).)

3.     *Sanchez Petitions for Resentencing Under Prop. 47*

In December 2014, Sanchez petitioned the trial court for resentencing under Prop. 47.  On the one-page form containing the petition, Sanchez checked the box indicating that he had been convicted of "Penal Code [section] 459 2nd Degree Burglary (Shoplifting)."  Sanchez made no attempt to show that the offense of which he was convicted qualified as shoplifting under the definition contained in newly-enacted section 459.5.  He did not provide any supporting documentation and did not cite to the record or other evidence.

4.     *The Trial Court Hears and Grants the Petition*

In February 2015, the trial court conducted a brief hearing on the petition.  The court first asked the prosecutor whether he wished to be heard.  The prosecutor stated that the People objected to resentencing, noting that Sanchez was initially charged with first degree burglary and that "it is not a . . . commercial burglary.  It happened in a laundromat connected to the apartment complex. . . .  He is not eligible."[3]  Sanchez's counsel submitted without offering any argument.

---

[2]     The applicable statute refers to a petition to recall the sentence and for resentencing.  (§ 1170.18, subd. (a).)  For simplicity, we will refer to it as a petition for resentencing.

[3]     As discussed below, the only document in the record describing the facts of the underlying crime in any meaningful detail refers to a "laundry room," not a laundromat.

The parties then engaged in a brief discussion regarding whether a first degree burglary conviction could be reduced to a misdemeanor under Prop 47. The prosecutor maintained that "only a commercial second degree burglary . . . is reduceable depending on the amount that was stolen." When the court asked for the amount stolen in the case, Sanchez's counsel responded: "I don't think anything was taken, Your Honor, based on my reading of the arrest report and the probation report. He was observed by the manager through closed-circuit television, the officers were called and he was then arrested and detained." This was the first reference at the hearing to either the probation report or the arrest report.[4]

The court then stated: "In looking at the probation report, pre plea report, it doesn't appear to be any financial loss." The court did not purport to address the other factual elements in section 459.5's definition of shoplifting, namely, that the person in question "enter[ed] a commercial establishment . . . while that establishment is open during regular business hours." (§ 459.5, subd. (a).)

The prosecutor also objected to the resentencing on the ground that doing so would violate the terms of the plea agreement. He argued that if Sanchez was entitled to any relief, it would be to set aside his plea.

---

For this reason, and because a laundromat is often understood as a commercial establishment open to the public, we will use the term laundry room.

[4] The probation report is the only document in the record that contains any meaningful description of the facts of the crime. According to the report, Sanchez, "armed with burglary tools [and accompanied by his girlfriend who stood watch], entered private property and bypassed the locking security door, entering the laundry room of an apartment complex." The apartment complex manager observed Sanchez through a live surveillance camera and called police, who arrived in time to witness Sanchez via the same live camera feed. The officers detained Sanchez and his girlfriend before they left the laundry room. Officers observed fresh pry marks on laundry equipment and recovered unspecified evidence. Sanchez allegedly told officers he was homeless and was breaking in to the coin operated machines for money. The apartment complex manager stated that Sanchez had "entered without permission" and there was no financial loss.

After confirming that Sanchez pled to second degree burglary, the court "grant[ed] the motion to reduce" the conviction to a misdemeanor, and it proceeded to sentence Sanchez to two years of summary probation, while ordering Sanchez to serve 332 days in county jail. Because Sanchez had served 332 days (after considering good time/work time credits), the court stated "it's a time-served sentence."

5. *The People's Appeal*

The People filed a timely notice of appeal. In their opening brief, they claim (1) Sanchez did not qualify for Prop. 47 resentencing because his offense did not involve entry into a "commercial establishment" during regular business hours, and (2) even if the new shoplifting statute could apply to the facts of this case, the proper remedy would be to vacate the plea and reinstate the original charges, not to reduce the conviction to a misdemeanor.

In his respondent's brief, Sanchez argues (1) the facts of the underlying crime were not properly before the trial court because they were based on a hearsay probation report; as a result, there is no basis to determine that Sanchez did not meet the eligibility requirements for resentencing, (2) even if the probation report can be considered, a " 'commercial establishment' is a broad term that can include a laundromat," and (3) the trial court's remedy of reduction to a misdemeanor was proper.

**DISCUSSION**

**A.    Appealability**

The trial court's order is appealable as "[a]n order made after judgment, affecting the substantial rights of the people" (§ 1238, subd. (a)(5)) and as "[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense" (§ 1238, subd. (a)(6)). (See also *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1294-1295 (*Kaulick*) [order

6

recalling sentence and resentencing inmate under Proposition 36 (the Three Strikes Reform Act of 2012) is appealable under section 1238.5, subdivisions (a)(5) and (a)(6)].)

Although the trial court reduced Sanchez's conviction to a misdemeanor, the appeal is properly to this court and not to the appellate division of the superior court. (*People v. Rivera* (2015) 233 Cal.App.4th 1085; *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1111.)

**B.      The Trial Court Erred in Granting Relief**

1.      Relevant Provisions of Prop. 47

Voters enacted Prop. 47 on November 4, 2014.  Pursuant to the state constitution, Prop. 47 went into effect the following day.  (Cal. Const., art. II, § 10, subd. (a).)

Under Prop. 47, certain drug and theft-related offenses that had previously been designated as felonies or "wobblers" (crimes that can be punished as either felonies or misdemeanors) were reduced to misdemeanors.  (*People v. Rivera, supra*, 233 Cal.App.4th at p. 1091.)  Prop. 47 did so by adding new, or amending existing, statutory provisions.  (See *ibid*.)

One of the statutory provisions added by Prop. 47 is section 459.5, which provides:

> "(a)  Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary.  Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170.
> "(b)  Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

7

As is evident from the statutory language, not all burglaries were reduced to misdemeanors. The only burglaries reduced were those (1) involving entry into a "commercial establishment," (2) during regular business hours, and (3) where the value of the property in question does not exceed $950.

Prop. 47 also added section 1170.18, which contains two procedural mechanisms for the benefit of those previously convicted of felonies that were reduced to misdemeanors by virtue of the Act. The two mechanisms differ, depending on whether the potential beneficiary has completed serving his or her sentence.

Subdivision (a) of the statute applies to persons still serving their sentences and was the applicable provision in this case. It provides: "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." (§ 1170.18, subd. (a).)

If the petitioning inmate meets the statutory eligibility requirements, the trial court must resentence the inmate in accordance with Prop. 47 "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) Section 1170.18 defines "unreasonable risk of danger to public safety" (§ 1170.18, subd. (c)) and lists various factors that a court may consider in determining whether the inmate poses such a risk (§ 1170.18, subd. (b)).[5]

2.      The Burden to Establish Eligibility for Resentencing

As discussed above, section 1170.18, subdivision (a), provides that "[a] person currently serving a sentence for a conviction . . . of a felony or felonies who would have

---

[5]     Persons with certain prior offenses may not obtain relief under section 1170.18. (§ 1170.18, subd. (i).) This provision is not at issue here.

8

been guilty of a misdemeanor under the act . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ." Subdivision (b) goes on to state that, "[u]pon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a)." (§ 1170.18, subd. (b).)

Prop. 47 does not state who bears the initial burden to establish eligibility for resentencing under section 1170.18, subdivision (a). The issue was squarely addressed in *People v. Sherow* (2015) 239 Cal.App.4th 875, in which the court held that the petitioner has the initial burden of establishing eligibility for resentencing under Prop. 47. In that case, an inmate convicted on numerous counts of second degree burglary petitioned for resentencing under Prop. 47 with respect to five of the counts. His petition contained "no reference to facts or evidence." (*Id.* at p. 877.) The People opposed the petition, claiming the loss exceeded the $950 threshold. (*Ibid.*) The trial court denied the petition.

The inmate appealed, challenging the denial of the petition with respect to two counts. He argued that "the record does not show the loss as to each count exceeded $950 and thus the two counts should be resentenced as misdemeanors." (*Ibid.*) The Court of Appeal rejected his contention, holding that the inmate "had the burden to show the property loss in each of those counts did not exceed $950 and thus fell within the new statutory definition of shoplifting." (*Ibid.*) Among other things, the court quoted the following from the published work of Judge J. Richard Couzens and Presiding Justice Tricia A. Bigelow devoted to Prop. 47:

> " 'The petitioner will have the initial burden of establishing eligibility for resentencing under section 1170.18(a): i.e., whether the petitioner is currently serving a felony sentence for a crime that would have been a misdemeanor had Proposition 47 been in effect at the time the crime was committed. If the crime under consideration is a theft offense under sections 459.5, 473, 476a, 490.2, or 496, the petitioner will have the additional burden of proving the value of the property did not exceed $950.' " (*Id.* at p. 879, quoting Couzens & Bigelow, Proposition 47: "The Safe Neighborhoods and Schools Act" (Feb. 2015) p. 40 <http://www.courts.ca.gov/documents/Prop-47-Information.pdf> [as of Oct. 21, 2015].)

We agree with the holding in *Sherow*. Indeed, it is consistent with the well-established rule contained in Evidence Code section 500, which provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (See also *People v. Barasa* (2002) 103 Cal.App.4th 287, 295-296 [under Evidence Code section 500, defendant has the burden of proving that his drug possession or transportation was for personal use and that he was therefore eligible for sentence reduction under Proposition 36]; *People v. Atwood* (2003) 110 Cal.App.4th 805, 812 [Under Evidence Code section 500, "[t]he burdens of producing evidence and of persuasion flow from a party's status as a claimant seeking relief"].) Sanchez was the party petitioning for relief. As such, he had the initial burden of demonstrating eligibility under section 1170.18, subdivision (a).[6]

In his respondent's brief, Sanchez seems to accept that he had the initial burden, though he claims he met that burden by filing his petition to recall his sentence on a form approved by the Los Angeles County Superior Court.[7] Thus, he states: "The defendant initially met his burden by filing the Superior Court's Proposition 47 Petition." Similarly, he asserts that "[h]e did everything that the [court-approved] form requested of him and therefore made the necessary prima facie showing of eligibility."

---

[6]    In contrast, if the petitioning inmate establishes that he is eligible for resentencing under section 1170.18, subdivision (a) (i.e., that the crime of which he was convicted was reduced to a misdemeanor by the Act), the prosecution has the burden of establishing, by a preponderance of the evidence, that resentencing the petitioner would pose an unreasonable risk of danger to public safety. (*Kaulick, supra*, 215 Cal.App.4th at pp. 1301-1305.)

[7]    Sanchez submitted his petition to the trial court using "CRIM 235," a form approved by the Los Angeles County Superior Court. A revised version of that form can be found on the court's website. (<http://www.lacourt.org/forms/pdf/CRIM235.pdf> [as of Oct. 21, 2015].)

We reject Sanchez's unsupported suggestion that use of a court-approved form, *in and of itself and without supporting evidence*, satisfies his burden of proof. As discussed above, as the party seeking relief, Sanchez had the burden of establishing "each fact the existence or nonexistence of which is essential to *the claim for relief . . . that he is asserting*." (Evid. Code, § 500, italics added.) Completing a form does not establish the requisite facts.

Sanchez maintains the People waived the right to challenge the sufficiency of his initial showing because they allegedly failed to "object" in the trial court and in their opening brief. Sanchez's contention is legally and factually unsupported. Legally, the People were not required to "object" to the sufficiency of the showing. At most, they were required to argue that the showing was insufficient. Moreover, as a factual matter, the prosecutor specifically stated that the "People will object" to resentencing because "it is not a . . . commercial burglary. It happened in a laundromat connected to the apartment complex. . . . He is not eligible." The People take the same position in their opening brief. There was no waiver of the right to challenge the adequacy of the showing.

Finally, as we discuss below, irrespective of which side had the burden of proof, the evidence that was before the trial court cannot support the trial court's ruling.

3.      The Propriety of Relying on the Probation Report to Establish Initial Eligibility for Resentencing

In arguing that the trial court erred in resentencing Sanchez, the People rely on the commission of the crime as described in the probation report which, as noted above, is the only document in the record containing any meaningful description of the facts and was the only document relied upon by the parties and the trial court at the hearing on Sanchez's Prop. 47 petition.

Sanchez maintains "the 'facts' underlying defendant's conviction were not properly before the court because they were based upon a hearsay probation report . . . ." Therefore, he claims, "no legally admissible evidence regarding the nature

11

of the prior conviction was ever presented to the trial court."

We reject defendant's arguments for several reasons. First, Sanchez forfeited any claim of error because he did not object to the trial court's consideration of the probation report on hearsay, or on any other grounds. (See *People v. Brimmer* (2014) 230 Cal.App.4th 782, 799-800 ["Defendant argues that the People failed to present proper evidence regarding his section 1170.126 petition [for resentencing], claiming the trial court is limited to the 'record of conviction' and that the police reports, probation report, and transcripts of the 911 call and witness statements submitted by the People are not proper sources of information regarding the factual circumstances of the crime. Defendant, however, did not object to the documents submitted by the People or challenge them. As such, defendant has forfeited this claim"].)

Second, any error was invited. Not only did Sanchez's counsel fail to object, she was the one who first cited and relied upon the probation report in an effort to show her client was eligible for resentencing because the amount taken was less than $950. (See *People v. Harrison* (2005) 35 Cal.4th 208, 237 [if there was error in admitting hearsay statements, defense invited the error].) As the People note in their reply brief, Sanchez wants to "benefit from the trial court's consideration of the facts when they benefited him, but prevent review of those same facts when they do not." Sanchez cannot have it both ways. He invited the trial court to consider the probation report. He cannot now complain about its use.

Finally, Sanchez's argument proves too much. As Sanchez himself acknowledges, without the probation report, the facts of the underlying crime were not before the trial court. If so, Sanchez failed to meet his burden of establishing eligibility for resentencing under section 1170.18, subdivision (a); i.e., he failed to establish that the crime of which he was convicted was reduced to a misdemeanor by Prop. 47. (See Evid. Code, § 550, subd. (b) ["The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact"].) Without the probation report, there is no evidence that can support the trial court's order.

12

As we now explain, the facts contained in the probation report—the only evidence upon which the trial court relied—cannot support the trial court's decision that Sanchez was eligible for resentencing.

### 4. No Evidence Supports the Trial Court's Resentencing Order

As discussed above, "shoplifting" is defined as "entering *a commercial establishment* with intent to commit larceny *while that establishment is open during regular business hours*, where the value of the property that is taken or intended to be taken *does not exceed nine hundred fifty dollars* ($950)." (§ 459.5, subd. (a), italics added.)

The probation report reflects that Sanchez bypassed a locking security door and entered a laundry room on private property (an apartment complex). He did so without permission and was apprehended, apparently while breaking into the coin operated laundry machines for money. These acts do not meet the statute's definition of "shoplifting."

First, Sanchez concedes that the probation report contains no evidence regarding the "business hours" of the laundry room. In and of itself, this is enough to require reversal of the trial court's order. We note, however, that the probation report states the offense occurred on August 22, 2014 (a Friday), at 3:20 in the afternoon. If the laundry room in question was a "commercial establishment," *perhaps* an argument could be made that the offense occurred "during regular business hours" as required under section 459.5, subdivision (a). We need not decide this question however because (1) it was not raised by Sanchez, and (2) the apartment complex's laundry room was not a "commercial establishment."

Neither Prop. 47, nor the Penal Code, defines the term "commercial establishment." We therefore must follow the ordinary rules of construction.

"When we interpret an initiative, we apply the same principles governing statutory construction." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*); accord *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212.)

13

Therefore, "[w]e first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson* at p. 571; see also *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.)

Because the term "commercial establishment" was not defined in the ballot initiative and is not defined in the Penal Code, we begin with the words themselves, giving them their ordinary meaning. "A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E.W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn.2; see also *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word" (construing statutory term)]; *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 30 ["It is thus safe to say that the 'ordinary' sense of a word is to be found in its dictionary definition."].)

As relevant here, Black's Law Dictionary defines "establishment" as "[a]n institution or place of business." (Black's Law Dict. (10th ed. 2014) p. 664, col. 1.) It defines "commercial" as "[o]f, relating to, or involving the buying and selling of goods; mercantile." (Black's Law Dict., *supra*, at p. 325, col. 2.) Similarly, the American Heritage Dictionary defines "commercial" as "[o]f or relating to commerce" or "[e]ngaged in commerce," and it defines "commerce" as "[t]he buying and selling of goods, especially on a large scale, as between cities or nations." (American Heritage Dict. (4th ed. 2000) p. 371.)

Thus, these dictionary definitions reflect that a "commercial establishment" is a place of business where goods are commonly sold. This construction is consistent with the common understanding of "shoplifting," which Black's Law Dictionary defines as

14

"[t]heft of merchandise from a store or business; specif., larceny of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use without paying the purchase price." (Black's Law Dict., *supra*, at p. 1590, col. 1.)

In sum, the term commercial establishment is generally understood to mean a business or store that sells goods or merchandise. Such a place of business, at least during regular business hours, is generally open to the public and permission is not ordinarily required to gain entry. A laundry room of an apartment complex is not open to the general public and does not reasonably fit within the definition of "commercial establishment." Sanchez did not engage in what is ordinarily understood to be "shoplifting"—theft of goods from a store.

Our conclusion finds support in the Court of Appeal's decision in *People v. Woods* (1998) 65 Cal.App.4th 345, 347 (*Woods*). The facts in *Woods* are remarkably similar to those of the instant case. In *Woods*, "police officers responded to a report of a burglary in progress at an apartment complex. The officers found defendant Woods and a female companion inside a laundry facility within the complex. One of the washing machines had been pulled from the wall and its coin box had been broken. Fresh pry marks were visible on the door to the laundry room. The apartment manager told police he had locked the laundry room an hour before and at that time nothing in the room had been disturbed. The manager further reported that neither Woods nor his companion lived in the complex." (*Id.* at p. 347.)

One of the issues in *Woods* was whether the evidence supported defendant's first degree burglary conviction. Defendant Woods argued that the laundry room of the apartment complex was not an "inhabited dwelling house," and that he therefore should not have been convicted of first degree burglary. (See § 460, subd. (a) ["Every burglary of an inhabited dwelling house . . . is burglary of the first degree"].) The Court of Appeal rejected his argument. (*Woods, supra*, 65 Cal.App.4th at pp. 347-350.)

The court observed that "Woods fails to cite any authority for his contention that the laundry room must be an integral part of an *individual apartment unit* as opposed to

15

an integral part of the *complex* in order to constitute an inhabited dwelling. . . . [T]he relationship of the laundry room to the complex itself is the proper focus of inquiry. Based on the evidence of the physical placement of the laundry room within the complex and the fact it was used by tenants to do their laundry, a household chore, we find no error in the court's implied finding this room was an integral part of the complex, and thus an inhabited dwelling." (*Id.* at p. 349.)

The court also rejected defendant's suggestion that the laundry room failed the " 'reasonable expectation test' for an inhabited dwelling." (*Woods, supra*, 65 Cal.App.4th at p. 349.) The court acknowledged that a tenant might expect to encounter "strangers" in the laundry room, but observed that "the 'strangers' a tenant would expect to meet in the laundry room were fellow tenants doing laundry, not burglars." (*Ibid.*) The court concluded that the evidence was sufficient "to support a finding, under the reasonable expectation test, that the laundry room is an area where tenants would expect protection from unauthorized intrusions, and thus it qualifies as an inhabited dwelling." (*Id.* at pp. 349-350.)

We agree with *Wood*'s analysis. On the record before us, Sanchez did not break into a commercial establishment. He broke into a laundry room that was an integral part of a residential complex. That the prosecutor was agreeable to a second degree burglary disposition does not mean defendant was entitled to resentencing under Prop. 47. He was not.

### DISPOSITION

The trial court's February 2, 2015 order granting defendant's petition for resentencing is reversed, and the matter is remanded to the trial court with directions to enter a new order denying defendant's petition for resentencing.

RUBIN, Acting P. J.

WE CONCUR:

FLIER, J.                                                                    GRIMES, J.

16